## Emaus Borough v. Security Trust Company. No. 2.

*Boroughs — Ordinances — Streets—Widening of streets—Building within street-line—Road law—Equity—Motive for passing ordinance.*

1. The motives of the members of a borough council or the influences under which they acted cannot be brought to nullify an ordinance duly passed in legal form to widen a street.

2. The power of a borough to open or widen streets is discretionary, and its exercise will not be reviewed by the courts; nor will the borough be required to open the whole length of a plotted street.

3. The omission of a borough to open a widened street at once and for its whole length cannot raise an inference that the widening ordinance was enacted merely to harass or oppress a particular land owner.

4. The right of a borough to devote portions of a public highway for grass-plots, the planting of shade trees, the maintenance of hitching-posts, stepping-stones or for other purposes which are useful, healthful or ornamental is well established.

5. Where a borough has passed an ordinance in proper form widening a street and fixing its boundaries, and has tendered its bond for the payment of damages, title to the land for highway purposes is vested in the borough, and it may proceed with the widening of the street, and until the street is actually opened upon the ground, may restrain the erection of a building upon the land so taken.

6. In such case, the fact that the borough does not intend at once to open the entire length of the street to the width provided by the ordinance does not prevent it from enjoining an individual owner from encroaching upon the street in front of his premises.

Bill for injunction. C. P. Lehigh Co., June T., 1924, No. 8, in Equity.

*Oliver W. Frey* and *Henry L. Snyder*, for plaintiffs.

*Butz & Rupp*, for defendants.

Emaus Borough *v.* Security Trust Company.   No. 2.

RENO, P. J., Sept. 15, 1924.—The purpose of this suit is to enjoin defendants from erecting a bank building in the Borough of Emaus, which, it is alleged, encroaches upon Main Street, in that borough.

A similar case between the same parties and involving the same building was dismissed (6 D. & C. 395) because it did not there appear that the borough had taken the requisite steps for appropriating the land comprehended within the building-lines of the street to public uses.

Thereafter, as will appear from the findings of facts, the borough enacted an ordinance fixing the width of the street and tendered its bond for the damages sustained by the appropriation.   The defendants continued to erect the bank building, notwithstanding the passage of the ordinance and the acceptance of the borough's bonds, although upon changed plans, which, however, as we have found, encroached upon the limits of Main Street as fixed by the new ordinance.   The borough seeks to restrain the erection of the building.

This adjudication has been prepared under the proviso contained in the order of the Supreme Court, dated May 30, 1924, providing new rules of equity practice, and, for that reason, answers to the several requests for findings of fact are not included.

## Findings of facts.

1. The Borough of Emaus is a municipal corporation, organized and existing under the laws of the State of Pennsylvania.

2. The Security Trust Company of Emaus, Pa., is a banking corporation under the laws of the State of Pennsylvania, and has its principal place of business in the Borough of Emaus, Lehigh County, Pa., and Arthur P. Hauser is the contractor acting for and as the agent for the said Security Trust Company.

3. By a deed of conveyance dated Oct. 27, 1921, recorded in the Recorder's Office at Allentown, in and for the County of Lehigh, in Deed Book, vol. 368, page 387, wherein Oliver M. Kemmerer and Mary O. Kemmerer were the grantors, a certain messuage, tenement and tract of land, situate at the northwest corner of Main Street and Short Alley, in the Borough of Emaus, Pa., and containing a frontage of 33.81 feet on Main Street, a frontage of 37.65 feet on Chestnut Street, a depth along Short Alley, on the east side, of 200.25 feet, and a depth along the west side of 158.63 feet, and a width in the rear along Green Alley of 41.50 feet, and the depth of the building now in process of erection is approximately 80 feet.

4. The deed of conveyance to the Security Trust Company of Emaus, Pa., contained no restrictions as to the location of any buildings upon the premises with reference to the house-line, and in none of the deeds in the chain of title to the premises are there any such restrictions.

5. The Security Trust Company of Emaus, Pa., on May 9, 1923, being in possession of these premises, obtained a permit to erect a one-story bank on Main Street, containing 50 feet in front and 60 feet in depth, and paid the sum of $1.50 for fees for the same.

6. The Borough Council of Emaus passed Ordinance No. 14, approved April 21, 1874, fixing the building or house-line on Main Street, in the Borough of Emaus, between First Street and Chestnut Street.

7. The building-line or house-line established by said ordinance, approved April 21, 1874, was substantially adhered to and acquiesced in by the property owners on Main Street up to the time of the attempted erection of the banking-house by the Security Trust Company.

8. The Borough of Emaus, through its engineer, issued a building permit to the defendants and gave the lines and stakes for the defendants' new building in accordance with the house-lines established by Ordinance No. 14, approved April 21, 1874, giving the line for the proposed building 26 feet 7 inches north of the curb-line of Main Street, which was 18 feet 7 inches north of the north line of the pavement on Main Street, and the line which the borough engineer ran to indicate the southern line of the building ran 16 to 18 feet west of the line of intersection between Main Street and Chestnut Street.

9. After the granting of the permit, the said Security Trust Company of Emaus, Pa., began the work of erecting a bank building on its property. The excavation for the proposed building was begun and the stakes for the same were placed 16 feet north of the curb-line on Chestnut Street, the width of the pavement on Main Street being 8 feet and the width of the pavement on Chestnut Street also being 8 feet, thus deviating from the so-called house-line and the engineer's stakes.

10. That in proceedings in equity as of No. 2, June Term, 1923, between the same parties, in the same court, the court found that the effect of said Ordinance No. 14 was to widen Main Street to the width comprehended between the building-lines established on either side of the street, and to notify abutting property owners of the intention of the Borough of Emaus to appropriate and condemn such land under the power of eminent domain, but an injunction to restrain the erection of the bank building was refused because the evidence did not disclose that the borough had actually condemned the land and secured compensation to the owner.

11. The Borough Council of Emaus served a formal written notice upon the Security Trust Company of the intended introduction of an ordinance proposing the widening of Main Street, between Keystone Avenue and Fourth Street, to a definite width, so as to make the street-lines on either side to coincide approximately with the building-line or house-line then recognized and established.

12. By Ordinance passed May 19, 1924, and approved May 20, 1924, the Borough Council of Emaus widened Main Street, between Short Alley and Fourth Street, to a width of 100 feet, so as to make the street-line on either side to coincide approximately with the said building or house-line as then recognized and established.

13. A bond securing the payment of any damages that might be assessed against the Borough of Emaus for the appropriation of any land of the Security Trust Company by the borough was tendered to the said Security Trust Company on June 16, 1924, and accepted by it.

14. Subsequent to the serving of the aforesaid notice upon the Security Trust Company, the passage of said ordinance and a tendering and the acceptance of said bond, the defendants continued the construction and erection of the main front wall of its banking-house in and upon Main Street, as widened, to a distance of 4 feet 6 inches throughout, and width ranging from 12 feet to 18 feet, and to that extent encroaching upon the 100 feet ordained width of Main Street.

15. The main wall of no other building erected, or in the course of erection, on Main Street, between Keystone Avenue and Fourth Street, extends into and upon said Main Street as widened by the said Ordinance approved May 20, 1924.

16. Prior to the commencement of excavation on ground, there was a cement coping along the pavement in front of the property on Main Street,

406     DISTRICT AND COUNTY REPORTS.     [6 D. & C.]

Emaus Borough v. Security Trust Company.  No. 2.

said pavement being 8 feet wide, and immediately back of the coping was the front lawn, on which were trees.

17. The plan of the Security Trust Company of Emaus, Pa., provided for a pavement on Main Street 16 feet in width instead of 8 feet, the present width of the pavement.

18. Many of the other properties on Main Street, not used for business purposes, have front lawns between the pavement, which is 8 feet in width, and the houses, and there are trees on said front lawns and hedge fences and other fences or copings along the pavement and separating the pavement from the lawn, and the lawns in many cases are elevated above the pavement level from a few inches to several feet.

19. There has been no widening by the borough of the pavement on Main Street and along the western side thereof, and all the property owners on Main Street, having private dwellings thereon, use, and have always used and enjoyed, their front lawns as private property.

20. Not all the houses on Main Street, on the same side as the property in question, are built identically in one line, some of them being nearer the curb and others more distant from the curb than 25 feet, the average house-line.

21. There is no present intention on the part of the borough to open Main Street to the width of 100 feet. The distance between the curb-lines is not to be changed, and all the rest of the property owners along Main Street are not to be required to move their yards, their coping, their trees, their porches, or such other obstructions as may exist in front of their properties, and the borough does not intend to require the removal of the same.

## Discussion.

It is beyond all dispute that the borough has properly taken all the necessary steps to widen Main Street and to condemn and appropriate that portion of the property of the Security Trust Company which is within the boundaries of the widened street.  It has enacted an ordinance fixing the boundaries of the street and has tendered its bond, conditioned for the payment of the damages incurred by the taking of the land. The Security Trust Company has accepted the bond.  By all our authorities, title to the land for highway purposes is vested in the borough by the tendering and acceptance of the bond, and the borough may proceed with the widening of Main Street and, until the street is actually opened upon the ground, restrain the erection of improvements upon the land so taken: Borough Code (Act of May 14, 1915, P. L. 312); Strohl v. Ephrata Borough, 178 Pa. 50; Fries v. Southern Pennsylvania Railroad and Mining Co., 85 Pa. 73.

This much the Security Trust Company concedes, but it contends that, even so, the borough is not entitled to equitable relief.  Its contention is that, although the borough has properly condemned the land of the Security Trust Company to public use, it may not restrain the private use of the land, because it does not intend presently to open the entire length of Main Street to the width provided by the recent ordinance.

This contention can best be examined in the light of the facts in this record. The Borough of Emaus was settled many years ago by a colony of Moravians.  In the erection of their houses along what has since become Main Street, these early land owners conformed to an artificial standard building-line, so that the main walls of their dwellings started at a substantially uniform distance from the middle of the street.  In 1874 (the village having then become a borough) the borough authorities recognized this line, and by ordinance prohibited future erection of houses beyond it.  To this action

there was general acquiescence until the Security Trust Company commenced the erection of its bank building in 1923. The Security Trust Company, alleging that the Ordinance of 1874 was invalid, undertook to erect a part of its building beyond that line. To prevent this encroachment, the borough sought and secured a temporary injunction, but was refused a permanent injunction upon the ground, *inter alia*, that, whether the effect of the 1874 Ordinance was to widen Main Street or merely to create building-lines, it, nevertheless, deprived the owner of private property, and that this could be done only upon condition that compensation for it was either made or secured to the property owner. Thereupon the borough took the steps to which reference has already been made.

In the years between 1874 and 1920 (and possibly even before 1874), the land owners along Main Street used and occupied the space between the so-called house-line (at which point the main walls of their houses were erected) and the pavement-line as private property. That is, they utilized that space (to quote from paragaph 8 of the findings of fact in the prior case) for "porches and bay-windows and other projections;" they "erected and maintained iron, wooden or hedge fences, walls, copings, etc., along the western pavement-line and the building, planted grass, shrubbery, flowers and trees; some of which were terraced, or at least were considerably elevated above the level of the pavement; no part of this space between pavement and house was used for public travel, except that walks extending from the houses to the pavement were used for egress thereto and regress therefrom, and except, also, that in front of certain business buildings the whole space was paved."

This condition the borough does not intend to disturb at this time. It does not intend to open Main Street so that the whole of the space of 100 feet will be available for public travel. It does not intend to require the property owners along Main Street to remove their porches, bay-windows, walks, trees and fences. On the contrary, according to the stipulation entered upon the record of this case, the borough intends to allow property owners to continue in the immediate future the use of their properties in the same manner as they have heretofore. In short, the borough purposes only the enforcement of the new ordinance to the extent necessary to restrain the erection of the main walls of buildings into or beyond the boundaries of the widened street. Thus, the ordinance to widen Main Street is but a continuance and a strengthening of the Ordinance of 1874; a means whereby the ancient building-line is preserved.

This circumstance constitutes the basis of the contention of the Security Trust Company. It contends that this evinces a purpose on the part of the borough to enforce the ordinance against the Security Trust Company only by actually opening the street as against it and not as against other property owners. This is hardly within the facts; for, manifestly, if the prohibition of main walls within the limits of the street is to be enforced against all the property owners, the Security Trust Company suffers no deprivation that is not common to other property owners. The effect of taking the land within the street is to require the Security Trust Company to build its main wall upon the line established by consent and by the old building-line ordinance, and since the new ordinance will apply to the other property owners in precisely the same manner, it is difficult to discover any species of discrimination operating against the Security Trust Company.

But this does not fully answer the contention of the Security Trust Company. Its able argument goes to the length of impugning the good faith of

the borough officials. It calls attention to the prior effort to restrain the erection of the bank building, the failure of the borough to procure relief, the passage of the new ordinance and the stipulation already referred to. The combined effect of all this, and of other facts which need not be detailed, it argues, is to exhibit an attempt on the part of the borough to restrain defendants from erecting its building without a purpose to open the street in good faith for the usual incidents of a highway. It must be admitted that there is considerable force to this argument. Indeed, we were so much impressed by it that we adverted to it in the opinion upon the motion to continue the preliminary injunction. But the difficulty is that we are not permitted to pass upon the motives which inspired the legislation. "The motives of the members of the council, or the influence under which they acted, cannot be brought to nullify an ordinance duly passed in the legal forms of borough legislation:" Freeport *v.* Marks, 59 Pa. 253. See, also, Pottsville *v.* Gas Co., 39 Pa. Superior Ct. 1; Sunbury & Erie R. R. Co. *v.* Cooper, 33 Pa. 278; Com. *v.* Moir, 199 Pa. 534. Thus, whatever may have been the motive which influenced the passage of the recent ordinance, the due forms of law having been fully observed, we are powerless to interfere.

Moreover, it is by no means clear that the borough cannot do what it purposes without subjecting its action to the suspicion of an improper motive. In the first place, the power to open streets is discretionary, and its exercise of that power will not be reviewed by the courts, nor will it be required to open the whole length of a plotted street. The law commits the performance of these duties to the exclusive discretion of the officers of the borough, who may lay out streets as and when they deem them necessary and open them to the extent determined to be proper. Hence, the omission to open at once and by one taking the whole length of a widened street cannot raise the inference that the widening ordinance was enacted merely to harass or oppress a particular land owner. It follows that, even if the borough does not now manifest an intention of opening the whole width and length of the street to public travel, we cannot on that ground refuse relief to it for an obstruction upon that part which it is not presently opening. And, in the second place, the right of the municipality to devote portions of the public highway for grass-plots, the planting of shade trees, the maintenance of hitching-posts, stepping-stones, or for other purposes which are useful, healthful or ornamental, seems to be well established: Martin *v.* Williamsport, 208 Pa. 590. Hence, it cannot be said that the attitude of the borough in presently permitting part of Main Street to remain as it was in years gone by constitute such a negation of the ordinances as to authorize us to pronounce it a discrimination.

It follows that the borough is entitled to relief. It is, as intimated in a prior opinion, to be deplored that this result must follow, but a search of the authorities, to which neither side contributed assistance, has disclosed nothing which would support another conclusion.

### Conclusions of law.

1. That the temporary injunction be made permanent.

2. That the Security Trust Company be required and commanded to remove that portion of its building erected within the lines of the street as provided by the Ordinance of May 20, 1924.

3. That the costs be paid by defendants.

### Decree nisi.

And now, Sept. 15, 1924, it is ordered that the foregoing findings of fact and conclusions of law be filed, and that the prothonotary enter this order as

a decree *nisi*, giving notice thereof to the parties or their counsel, and if no exceptions are filed thereto within ten days, the prothonotary shall enter the same as a final decree.                    From Edwin L. Kohler, Allentown, Pa.