400 A.2d 211

**Anthony B. DeSILVIO**

v.

**William J. RESTAUIRE, and Ford Motor Credit Corporation**

v.

**Dwayne KEMP t/d/b/a Canonsburg Auto Mart.**

**Appeal of FORD MOTOR CREDIT CORPORATION.**

Superior Court of Pennsylvania.

Submitted Oct. 26, 1978.

Decided March 28, 1979.

Reed J. Davis of Davis & Mazzotta, Pittsburgh, for appellant.

Joseph I. Lewis of Lewis & Stockey, Pittsburgh, for appellee DeSilvio.

Gary Kalmeyer, Pittsburgh, for appellee Restauire.

Before CERCONE, WIEAND and HOFFMAN, JJ.

HOFFMAN, Judge:

This is a case in equity involving several conversions of a 1974 Mark IV Lincoln automobile which was titled in defendant Ford Motor Credit Corporation and which eventually came into the possession of plaintiff Anthony B. DeSilvio. The case comes to us on a appeal by Ford Motor Credit from an order vesting title to the automobile in DeSilvio. Ford Motor Credit contends that it should retain title because it never ratified the transactions by which DeSilvio came into possession of the car. We agree and reverse the order of the court below for the reasons which follow.

On July 31, 1974, defendant William J. Restauire leased a 1974 Mark IV Lincoln automobile from Key Lincoln Mercury, a Ford dealer in New Kensington, Pennsylvania. The lease was for a fixed term of 27 months beginning September 1974 at a monthly rental of $245.54 due on the fifth day of each month. Restauire as lessee had no option rights to purchase the vehicle at the end of the term. Key Lincoln assigned the reversion to Ford Motor Credit, retaining an option to repurchase the reversion at the end of the term for $4100. Restauire made regular timely payments as they came due on the lease until August 5, 1975, after which his rental payments ceased.

Sometime after October 1974, Restauire placed an advertisement in a local newspaper offering the automobile for sale. Additional defendant Dwayne Kemp, the proprietor of Canonsburg Auto Mart, in Canonsburg, Pennsylvania, contacted Restauire and offered to sell the car for Restauire at his used car lot. On December 3, 1974, they signed a written

consignment agreement, empowering Kemp to sell the car for $8100. Kemp later disposed of the car, as detailed below, but never paid anything to Restauire.

On December 23, 1974, plaintiff Anthony B. DeSilvio, from Washington, D. C., was visiting relatives in Pennsylvania for the holidays when his car was involved in an accident. He decided to purchase another car rather than repair his own, and, upon a recommendation from his brother-in-law, Louis Ramey, DeSilvio visited Kemp's lot with Ramey. There Kemp had the Lincoln on display for sale. After a few visits, DeSilvio decided to purchase the Lincoln. He traded in his own car to Kemp and tendered part of the balance of the purchase price of $8,995, and at a later time sent Kemp a check for the remaining balance. In January 1975, when Kemp began to make excuses for delays in transferring title to him, DeSilvio began to suspect that something was wrong, and, no longer being in town, asked Ramey to pursue the problem for him. Ramey discovered that the car was titled to Ford Motor Credit and leased to Restauire.

On August 14, 1975 (nine days after Restauire's last payment on his lease) DeSilvio called Robert T. Dolmayer, Accounts Representative of Ford Motor Credit, and requested his assistance in transferring title from Ford Motor Credit to Kemp. DeSilvio recounted to Dolmayer the events by which he "bought" the car from Kemp. Dolmayer told DeSilvio that Restauire had no authority to sell the car to Kemp and advised DeSilvio to engage an attorney.

Shortly thereafter, Ramey did succeed in getting Kemp to remit a cashier's check for $2,000 payable to Restauire and Ford Motor Credit. Ramey delivered the check to Dolmayer and again asked him to transfer title to Kemp. Dolmayer refused to transfer title but accepted the check and called Restauire in to endorse the check over to Ford Motor Credit on August 19, 1975. Dolmayer applied the check to Restauire's account, which at the time was paid in full, the next installment not being due until October 5, 1975. At this time, Restauire admitted to Dolmayer that he had tried to

sell the car, thinking he could pay off Ford and make a profit, but had been cheated by Kemp. Dolmayer thereupon turned the file over to his supervisor and informed Key Lincoln that there was a possibility that the car had been converted. Ford Motor Credit never transferred the title of the Lincoln to Kemp or DeSilvio. On February 9, 1976, DeSilvio initiated the present action to compel Ford Motor Credit to turn title of the automobile to him.

The Chancellor who heard the case rendered an adjudication awarding title of the car to Ford Motor Credit plus damages against Restauire. The basis for the Chancellor's disposition was that while Ford Motor Credit had full knowledge of the transactions between Restauire, Kemp and DeSilvio when it accepted the check for $2,000, it also "had the unqualified and absolute right to be paid the full outstanding balance due on the vehicle," and consequently had not ratified the subsequent transactions. He concluded that Ford Motor Credit never relinquished title to the car and Restauire was liable to Ford Motor Credit for damages for his conversion of its car.[1] After exceptions were filed, the court *en banc* reversed the Chancellor, stating, without further elucidation, that there *was* a ratification by Ford Motor Credit. The court *en banc* ordered title of the automobile transferred to DeSilvio,[2] with damages to Ford Motor Credit against Restauire, and Kemp liable over to Restauire.

1. In his adjudication, the Chancellor did not consider whether DeSilvio was nonetheless entitled to ownership of the automobile as a good faith purchaser for value. *See Carr v. Keller,* 74 Pa.Dist. & C.Rep.2d 534 (Cumberland C.P. 1976) (purchaser may rely upon authority of dealer to sell vehicle offered on used car lot and procure certificate of title). *See generally* Uniform Commercial Code, 12A P.S. § 2–403. However, we do not reach this issue because counsel for DeSilvio has never raised this issue throughout the entire proceedings.

2. As Ford Motor Credit has never raised the issue of whether DeSilvio has an adequate remedy at law in the form of money damages, and because we reverse on other grounds, we will not consider the propriety of the remedy ordered. *See Sunbury & E.R. Co. v. Cooper,* 33 Pa. 278 (1859) (while equity will not usually compel the transfer of title to personal property, it may proceed to give such relief where there is no allegation that the proper remedy is at law).

■ Thus, the only issue presented for our review is whether Ford Motor Credit ratified the subsequent transactions of Restauire and Kemp by accepting the $2,000 check. The Restatement [2d] of Agency § 98 provides:

"The receipt by a purported principal, with knowledge of the facts, of something to which he would not be entitled unless an act to be done for him were affirmed, and to which he makes no claim except through such act, constitutes an affirmance. . . ." This Section of the Restatement has been adopted as the law of Pennsylvania. *Yarnall v. Yorkshire Worsted Mills,* 370 Pa. 93, 87 A.2d 192 (1952); *Gum, Inc. v. Felton,* 341 Pa. 96, 17 A.2d 386 (1941).

■ It will be noted that a "purported" principal can ratify and bind himself on acts done by another person not his agent and having no authority to act for him. *See Evans v. Ruth,* 129 Pa.Super. 192, 195, 195 A. 163, (1937). However, when receiving that which he is not entitled to receive except by affirmation of the other's act, he must have knowledge of all the surrounding circumstances. *McRoberts v. Phelps,* 391 Pa. 591, 138 A.2d 439 (1958); *Schwartz v. Mahoning Valley Country Club,* 382 Pa. 138, 114 A.2d 78 (1955).

■ Here, the Chancellor found that Ford Motor Credit had the knowledge required by Section 98 when it accepted the check for $2,000 from Ramey. Dolmayer himself testified that (1) he had earlier received a call from DeSilvio recounting his attempts to procure title from Kemp and (2) when asked to endorse the check Restauire admitted to him that he, Restauire, had tried to sell the car to Kemp. Thus, the Chancellor's finding is supported by substantial evidence and shall not be disturbed. The Chancellor nonetheless held that there was no ratification because Ford Motor Credit was entitled to receive the 2,000 under its lease with Restauire. The evidence in the record (including Ford Motor Credit's own Statement of Account, Exhibit "4") does show

that when Dolmayer received the check, Restauire was current in his lease payments, so Ford Motor Credit was not entitled to accelerate Restauire's lease payments for this reason.[3]

■ However, Ford Motor Credit *was* entitled to accelerate Restauire's lease obligations, because Restauire's prior conversion of the car, which he then admitted to Dolmayer, constituted a default under their lease agreement.[4] Since the accelerated balance owing was then $3,683.10, acceptance of the $2,000 check could not work a legal ratification, as Ford Motor Credit was entitled to receive that sum from Restauire under its remedies provided in the lease.

The order of April 19, 1977 of the court *en banc* is reversed and the decree nisi of November 30, 1976 is reinstated.

**3.** Liability for the accelerated balance of future installments owed under a lease may be provided by contract, but the liability does not occur until after there has been a default in the payment of a present installment due. *See Pierce v. Hoffstot,* 211 Pa.Super. 380, 236 A.2d 828 (1967).

**4.** The lease between Restauire and Key Lincoln Mercury, Inc. provides in pertinent part as follows:
"9. DEFAULT
In the event that the Lessee . . . breaches any undertaking or covenants contained in this lease . . . there shall be deemed to be a default of this lease. Upon the occurrence of any such default, Lessor may . . . recover from Lessee any unpaid Monthly Rentals for the balance of the lease term . . . ..
\*     \*     \*     \*     \*     \*
"11. LEASE ONLY
This agreement is one of leasing only and Lessee shall not have or acquire any right, title or interest in or to any Vehicle except the right to use and operate it as provided in this agreement."
Thus, Restauire's consignment of the vehicle to Kemp worked a conversion of the vehicle in violation of his lease agreement. This default allowed the assignee, Ford Motor Credit, to accelerate the balance of his lease payments. *See Pierce v. Hoffstot,* note 3 *supra.*