## Blumberg, Appellant, *v.* Broad Street Trust Company.

472

Argued December 9, 1937. Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Samuel J. Gottesfeld,* with him *Sidney L. Martin,* for appellant.

*Hubert J. Horan, Jr.,* with him *T. F. Deady,* for appellee.

OPINION BY MR. JUSTICE BARNES, March 21, 1938:

In November, 1926, the Broad Street Trust Company loaned the sum of $256,200 to Samuel Milgrim and Harry J. Altman, to finance the construction of sixty-one houses to be erected on the north and south sides of Pennway Avenue, between 50th and 51st Streets, in the City of Philadelphia. The loan was to be secured by sixty-one first mortgages on these houses, totaling $275,000, which, with their accompanying bonds, were to be assigned to the defendant company.

Construction work was commenced on December 1, 1926, but it did not progress as rapidly as anticipated, and a year later only thirty-three of the sixty-one houses had been completed. The completed houses were sold to purchasers prior to April 20, 1928. The remaining twenty-eight houses were not finished, and the Trust

Company, through foreclosure proceedings, subsequently acquired title to the properties.

The plaintiff in his statement of claim alleges that on November 1, 1926, when Milgrim and Altman applied for their loan, the Trust Company was unable to finance the entire building operation, and requested him to lend the company the sum of $18,300, which would enable it to accept the application. The plaintiff avers that he agreed to this proposal, and that on November 12, 1926, he entered into an oral contract with the defendant, whereby it ". . . agreed to guarantee the completion of the proposed sixty-one properties . . . within one year from the date that work was commenced thereon, and that the money contributed by plaintiff would be returned to him within one year from the date of the said mortgages, with interest," all of which was to be taken out of the proceeds of the sale of the various dwellings. The plaintiff claims that defendant was to repay the loan in installments of $300, which represented the equity in each one of the sixty-one mortgages to be created.

The plaintiff, having a deposit account with the defendant, on November 18 and 27, 1926, drew two checks upon that account, in the respective amounts of $18,000 and $300. While the Trust Company was the payee named in each check, it appears from the record that the money was deposited in a special account of Milgrim and Altman, designated as the "Pennway Avenue Operation Account," from which it was disbursed for the expenses of the building operation. Plaintiff instituted this suit against the defendant company on its alleged contract to repay the loan and upon the guarantee that the buildings would be completed, and the money advanced returned to him within one year. He claims the sum of $8,400 as a balance due and owing, admitting in his statement of claim that $9,900 was repaid to him by defendant.

The Trust Company denies that the oral agreement upon which the plaintiff relies was entered into, or that the money was loaned to it under the circumstances as described in the statement of claim. It avers that plaintiff loaned $18,300 to Milgrim and Altman, in accordance with plaintiff's agreement with said parties, whereby he was to deposit that sum in the Pennway Avenue Operation Account in the Trust Company, to assist them in financing the construction of the houses; that the agreement provided for repayment of the loan as follows: ". . . that the defendant would collect all moneys arising out of the sale, mortgage or other transactions had in regards to the Pennway Avenue properties, and that it would first reimburse itself in the amount of $256,200, advanced by it to Samuel Milgrim and Harry J. Altman, . . . and thereafter would pay the balance, if any, to the plaintiff until the plaintiff had received the sum of $18,300 together with interest and costs." It denies that it has received as a result of the transaction from which this action arises any sum in excess of its loan of $256,200 to Milgrim and Altman. It is averred that the plaintiff received four payments in the approximate sum of $300 each, in addition to those admitted in his statement of claim, and this the plaintiff acknowledged at trial.

During the course of the trial the plaintiff amended his statement of claim to allege that he had made an oral agreement with the defendant through Joseph Salus, its president, that ". . . if plaintiff would lend defendant the sum of $18,000 to $20,000, the defendant would repay the same to plaintiff within one year from that date with interest at six per cent per annum." The defendant thereupon amended its affidavit of defense to deny Salus' authority to make such agreement on its behalf. Mr. Salus, who was called under cross-examination, testified that he did not make any agreement to the effect as alleged by plaintiff.

The learned court below gave binding instructions to the jury in favor of the defendant on the ground that the authority of Salus to make the alleged contract on its behalf had not been established, and that the evidence did not show that the defendant company had received any benefit from the transaction, as the money was paid into the Pennway Avenue Operation Account, and not into its general funds.

The plaintiff's rule for a new trial was discharged, and from the entry of final judgment he has taken this appeal.

The plaintiff admits that the record does not establish the authority of the president of the defendant company to make the alleged contract. He contends, however, that such absence of authority cannot successfully be asserted as a defense because the payment of the various $300 installments is a ratification of the contract made on its behalf; that it received such an advantage from the plaintiff's performance that it may not now deny the authority of its officer to act for it in this instance.

A corporation cannot avail itself, as a defense, of an unauthorized act of its officer, where a contract has been entered into and executed in good faith, and the corporation has received the benefit of the performance: *Millward–Cliff Cracker Co.'s Est.*, 161 Pa. 157; *Presbyterian Bd. v. Gilbee*, 212 Pa. 310; *First Nat. Bank v. Am. Bangor State Co.*, 229 Pa. 27; *McBride v. Western Pa. Paper Co.*, 263 Pa. 345; *Hamaker v. Fulton Farmers' Assn.*, 271 Pa. 465. The recognition of liability by the corporation upon an unauthorized contract, will preclude it from thereafter repudiating it, because of lack of authority: *Mohrfeld v. Bldg. Assn.*, 194 Pa. 488; *First Nat. Bank v. Am. Bangor Slate Co.*, supra.

Therefore the only question presented by this appeal is whether the evidence justified the learned trial judge in removing from the jury's consideration the question whether there was a ratification by the corporation of the plaintiff's alleged oral contract made with Mr. Salus,

and whether the payment by the plaintiff of $18,300 into the Pennway Avenue Operation Account constituted such a benefit to the defendant company that it was estopped from denying Mr. Salus' authority to enter into the alleged contract.

In our opinion the action of the trial judge was required under the facts of the case. If the contract was ratified, as the plaintiff contends, it was incumbent upon the plaintiff to establish such ratification. This he failed to do. The record is devoid of any evidence that the $300 payments in question were made by the defendant company under circumstances indicating a ratification of the contract relied upon by the plaintiff. On the contrary, it would appear that the $300 payments were made from the Pennway Avenue Operation Account with the proceeds derived from the sale of the houses. Such payments cannot be held to be in ratification of an alleged loan from the plaintiff to the Trust Company, but are rather in fulfillment of the Trust Company's undertaking that when the houses were sold it would first take the portion of the proceeds to which it was entitled because of its loan to Milgrim and Altman, and then pay over whatever balance remained to the plaintiff. To permit a jury to conclude from such evidence that the defendant company ratified the contract, would be to substitute surmise for evidence in trying cases.

While the Trust Company here was the payee named in the two checks by which the plaintiff's loan was made, it received no benefit from the transaction because it immediately placed the money to the credit of Milgrim and Altman in the Pennway Avenue Operation Account. In doing so it removed the funds from its control and conferred the full right thereto upon the depositor. The uncontradicted testimony concerning the receipt of the funds by the Trust Company is to the effect that the money at no time found its way into the general assets of the Trust Company, but was immediately credited to the Pennway Avenue Operation Account. It cannot be

said the Trust Company received such benefit from the transaction that it is estopped from denying the authority of its president to make the alleged contract.

Our review of the record discloses no error which would justify a reversal of the judgment of the court below.

Judgment affirmed.