Gum, Incorporated, *v.* Felton et al., Appellants.

Argued November 25, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*Thomas P. Mikell*, with him *Saul, Ewing, Remick & Saul*, for appellants.

*Harry Shapiro*, with him *William B. Rudenko*, for appellee.

OPINION BY MR. JUSTICE LINN, January 6, 1941:

Plaintiff corporation filed this bill to restrain its landlord from attempting, by summary process, to collect rent under a lease alleged to have been unauthorized by plaintiff's board of directors and therefore void. The relief prayed for was granted and this appeal followed.

One-half of the capital stock of plaintiff was owned or controlled by Hamilton and the other half by Bowman. Their relations became hostile [1] with Hamilton

---

[1] See *Bowman v. Gum, Incorporated*, 321 Pa. 516, 184 A. 258; *Same v. Same*, 327 Pa. 403, 193 A. 271.

wrongfully [2] acting as president and the board of six directors equally divided into two unfriendly factions. In those circumstances, on October 10, 1936, while suit to remove Hamilton was pending, the plaintiff was in possession of certain premises pursuant to three leases, two terminating June 30, 1937, and the third, August 1, 1937, each providing for a term continuing from year to year until either party gave ninety days' notice of termination. With the corporation so in possession, Hamilton, on that date, purporting to act for plaintiff, but without authority, employed a real estate agent, Lieberman, to negotiate a new lease. An instrument dated November 20, 1936, purporting to be a lease for a term of five years from January 1, 1937, of the premises then occupied, and certain additional property, was executed by defendants and by Hamilton and the secretary of the corporation on behalf of the plaintiff; it was presented to the board of directors for approval but was rejected by a meeting held December 22, 1936. The 12th finding of fact is: "Shortly after the execution of said lease, Boyd T. Barnard, one of the defendants, requested Lieberman [the agent] to procure a resolution of the Board of Directors of Gum, Inc., authorizing the lease, and was informed by Lieberman that the Board would not adopt such a resolution."

The mandamus proceeding involving Hamilton's right to the presidency was terminated August 1, 1937, by a decree removing him from office and restoring Bowman. On October 15, 1937, Bowman purchased the Hamilton half-interest and resumed control of the corporation. The learned court found that it was not until November 2, 1937, that "the lawful officers of plaintiff corporation for the first time were informed of the new lease and received a copy of it from Lieberman," the agent.

---

[2] Hamilton was removed from the office of president and Bowman was restored by a mandamus proceeding brought May 7, 1936, by Bowman against the corporation, et al., in the Court of Common Pleas No. 1, March Term, 1936, No. 4729.

Other facts found are: "Thereafter [that is, on learning of the new lease] after consulting legal advice, the Board of Directors of Gum, Inc., on December 24, 1937, passed a resolution repudiating the lease and directing the corporate officers to negotiate a new one." "On December 27, 1937, plaintiff orally informed defendants that it considered the lease void and repudiated it, but that the corporation would continue to occupy the premises with the permission of defendants and to pay the rent reserved in the repudiated lease, pending the negotiation of a new lease. This information was repeated in a letter of January 3, 1938." "No reply was made on behalf of defendants either to the oral or to the written communication, defendants merely continuing to receive the rent reserved in the presently contested lease and plaintiff continuing to furnish the heat, water, elevator power and watchman service at its own expense."

Appellants' contention, as stated in the brief, is that "the lease, although unauthorized in the first place, has been ratified by the action of the lessee and that it is estopped now to deny its validity." The facts do not support the contention.

Defendants were promptly informed that the board of directors had declined to authorize the lease, and it was not until November 2, 1937, almost a year after its date, that the lawful officers of the corporation were informed of its existence and terms. The period prior to that date therefore drops out of our inquiry; the Hamilton faction could not ratify what they had no power to do: *Crum's Appeal*, 66 Pa. 474. The knowledge of Hamilton and of the treasurer that the lease had been executed despite the refusal of the board to authorize it, is not ground for estoppel in the circumstances: cf. *Bangor Ry. Co. v. Slate Co.*, 203 Pa. 6, 52 A. 40; *Campbell v. Latona B. & L. Ass'n*, 92 Pa. Superior Ct. 436; *Culbertson v. Cook*, 308 Pa. 557, 162 A. 803. So far as appears, the Bowman faction in the board, prior to November 2, 1937, was entitled to act

on the assumption that the form of lease which had been presented for approval had never been executed because authority had been refused. The record shows nothing prior to that date which would support a finding that appellants had ratified the lease. Until that time, the Bowman faction was also entitled to assume that the corporation was still in possession under the leases in existence when the Hamilton faction wrongfully took control of the corporation.

When plaintiff, on November 2nd, learned what had been done on its behalf, it became necessary to accept or reject the proposed obligation. There is no evidence of express ratification. May ratification be implied from the facts shown? Sections 98 and 99 of the Restatement, Agency, provide: "98. The receipt of a purported principal, with knowledge of the facts, of something to which he would not be entitled unless an act purported to be done for him were affirmed, and to which he makes no claim except through such act, constitutes an affirmance unless at the time of such receipt he repudiates the act. If he repudiates the act, his receipt of benefits constitutes an affirmance at the election of the other party to the transaction." "99. The retention by a purported principal, with knowledge of the facts and before he has changed his position, of something which he is not entitled to retain unless an act purported to be done on his account is affirmed, and to which he makes no claim except through such act, constitutes an affirmance unless at the time of such retention he repudiates the act. Even if he repudiates the act, his retention constitutes an affirmance at the election of the other party to the transaction."

The application of the principle requires some statement of the difference between the premises held under the prior leases and those demised by the challenged lease. By the prior leases, the plaintiff held premises 3233-3249 Woodland Avenue and the basement, first, second, fourth, and fifth floors of 3240 Ludlow Street.

The new lease was of the same premises but, in addition, leased the third floor of 3240 Ludlow Street, subject to a monthly term then held by Molded Insulation Company, a tenant who was allowed to remain in possession under the plaintiff at a rent increased from $50 per month to $150, payable to plaintiff. The lease also included several other premises which have not been occupied by the plaintiff. By this lease the plaintiff received the rent from the third floor tenant, something to which it was not entitled under the old leases. As the total rent paid under the new lease was greater than that payable under the old leases, the learned court was of opinion that the plaintiff, by complying with the new lease, had not received any "benefit" within the principle quoted above. It is unnecessary to pass on the point because, whether or not plaintiff received a benefit, the parties changed their relations in such way that the rule became inapplicable.

The record does not present for decision whether the period from November 2, 1937, to December 27, 1937, was an unreasonable time for defendant to accept or reject the lease; this is so because the parties then made a new contract; they agreed to conduct certain negotiations; their agreement supports the conclusion that, until the date of the agreement, plaintiff should not be held to have ratified the lease but that their future relations should be the subject of negotiation. This agreement grew out of a conference, on December 27th, between plaintiff's agent and one of the defendants in which plaintiff informed defendant "that the company could not consider the [new] lease as valid, that it considered it void, that it repudiated the lease, that it desired to negotiate a new lease, and pending the negotiation of the new and valid lease the company would occupy the premises with the permission of [the defendants] and pay the rental called for under the repudiated lease." At defendants' request, the proposal was subsequently put in writing. It was dated January

3rd and stated: "Pursuant to our conversation of the other day, I am compelled to advise you that the lease under which Gum, Inc., is occupying premises at 32nd and Woodland Avenue is invalid, for the reasons I gave you at our discussion. Consequently Gum, Inc., cannot recognize the lease, or accept the same as valid. They shall, however, with your permission, continue to occupy the premises with the understanding that Senator Shapiro, as soon as he returns from California, will sit down with you and the Pennsylvania Company for the purpose of negotiating a new and valid lease." That was a business offer to which no formal reply was made. But an offer may be accepted by conduct and what the parties did pursuant to this offer shows conclusively that it was accepted[3] because, for a period of about four months, they endeavored to agree on terms of a new lease. They failed to come to an agreement and this suit followed shortly after. If the defendants had rejected the offer to negotiate a new lease, a different question would have been presented; they did not reject it; they negotiated as proposed. The principle on which they rely therefore does not aid them because by the agreement resulting from the letter of January 3rd they deprived themselves of the right to elect to treat the receipt of the alleged benefit as an affirmance of the contract.[4] It is important to note that the letter recognized plaintiff's possession under the challenged lease and not under the old leases; the letter refers to it as the "lease under which Gum, Inc., is occupying prem-

---

[3] Compare *Indiana Mfg. Co. v. Hayes,* 155 Pa. 160, 26 A. 6; *Burke Electric Co. v. Pa. L. & P. Co.,* 61 Pa. Superior Ct. 374; Restatement, Contracts, § 72; 1 Williston, Contracts, § 91, et seq.

[4] See 2 Fletcher, Corporations (1931) 833: "But the retention of money paid to the corporation does not work a ratification where the corporation promptly rejects the contract and so informs the other party who acquiesces in the retention of the money pending further dealings . . ." citing *Bessler v. Derby,* 80 Ore. 511, 157 Pac. 791 (1916).

ises" in question. Plaintiff proposed that on counsel's return the parties should endeavor to negotiate a new lease to take the place of the one repudiated. The negotiations took place; both the old and the new leases were laid aside; the relations of the parties from the time the offer was accepted were landlord and tenant by a lease at will. Compare *Jennings v. McComb*, 112 Pa. 518, 4 A. 812. The learned court was therefore right in holding that ratification could not be found from the circumstances shown. As the conduct of the parties settled their relations from that time to be those incident to a lease at will, the effort summarily to enforce the terms of the instrument was necessarily enjoined.

Decree affirmed at appellants' costs.