## Yarnall, Appellant, *v.* Yorkshire Worsted Mills.

Argued January 9, 1952. Before DREW, C. J., STERN, STEARNE, BELL, CHIDSEY and MUSMANNO, JJ.

*James N. Robertson,* with him *Edward Rocap,* and *Rocap & Rocap,* for appellant.

*Gilbert W. Oswald,* with him *J. H. Ward Hinkson,* and *Schnader, Harrison, Segal & Lewis,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, April 1, 1952:

On *May 3, 1949* a stipulation settling a suit in replevin was entered into signed by then counsel for appellant and counsel for appellee and approved by President Judge ERVIN of Delaware County. Appellant on *January 12, 1951* filed a petition to set aside this stipulation and reopen the case and a rule was granted. On January 22, 1951 the rule which was previously granted was refused without an answer being filed or a hearing held. This appeal followed.

From the allegations in the petition and record papers the following facts appear. On October 1, 1948 an action in replevin was instituted by appellant against appellee for 12 looms which were in the possession of the latter. Separate counts for damages and for an accounting were also asked in the complaint. After a petition requesting the production of certain books and records of appellee was dismissed, the case came on for trial and after the trial had proceeded for a time, the above mentioned stipulation was executed. Under the terms of the stipulation the appellant was to receive $5,000 within one week and upon payment of $25,308 to the appellee within 90 days he was to receive the looms. If, however, he did not pay such amount within 90 days, the looms were to become the property of appellee.

In his petition appellant alleges that his counsel told him that he was threatened with a nonsuit and that

appellee offered to settle "for $5,000.00 and the machinery"; that upon recommendation of his counsel he agreed to such offer; that his counsel told him to go to a restaurant where they met; that at that time appellant for the first time ". . . saw the stipulation and on the same day voiced his objections to paying the sum required for the machinery *within 90 days.*"; and that the $5,000 check was received by his counsel and cashed "against [his] directions" and that $3,250 of such amount was turned over to him.

About two weeks after the trial petitioner wrote to the trial judge and requested a conference with regard to the settlement but did not include in such letter any objections to the stipulation or the authority of his counsel to execute it. He later withdrew his request for this conference.

The next action taken by appellant was on January 27, 1950, eight months later, when with new (present) counsel acting for him, he filed a petition to set aside the settlement and reopen the case on the grounds that the testimony given by an officer of the defendant (called for cross-examination) "approached perjury." The lower court after answer denied this petition on March 8, 1950, and nothing was done by appellant until January 12, 1951 when for the first time appellant alleged that his original counsel did not have authority to enter into the stipulation.

Several significant conclusions appear from this summary of the facts. Appellant *knew* the terms of the stipulation shortly after it was signed by his attorney and approved by the trial judge. At that time his only alleged objection was to "paying the sum required for the machinery *within 90 days*". Despite this dissatisfaction, he elected to take the net proceeds of the $5,000 when his counsel gave them to him. He waited for eight months before he filed any formal

objection, at which time he did not claim any lack of authority on the part of his attorney. He then delayed ten months more before he finally repudiated the stipulation. This was twenty months after admitted knowledge of its terms. There is no allegation that at any time before the filing of the petition here involved he communicated his disavowal of the agreement to the appellee. Under such circumstances the lower court was correct in refusing the rule and we agree with the opinion when it states, ". . . a careful consideration of the petition filed herein, as the basis for the rule, indicated that a rule was neither necessary nor desirable."

A client ratifies his attorney's act if he does not repudiate it promptly upon receiving knowledge that the attorney has exceeded his authority. In *Baumgartner v. Whinney,* 156 Pa. Superior Ct. 167, 171, 39 A. 2d 738, that court said, "True, an attorney has no power, in the absence of express authority, to compromise or settle his client's claim. North Whitehall Township v. Keller, 100 Pa. 105. But a client may ratify his attorney's acts; and 'an affirmance of an unauthorized transaction may be inferred from a failure to repudiate it': Restatement, Agency, §94. Indeed, a client makes his attorney's act his own if he does not disavow it the first moment he receives knowledge that his attorney has transcended his authority. Bredin v. Dubarry, 14 S. & R. 27; Filby v. Miller, 25 Pa. 264; Andersen Coal M. Co. v. Sloan, Howell & Co., 46 Pa. Superior Ct. 320; Smuckler v. DiNapoli, 62 Pa. Superior Ct. 570." Here there is no allegation of any repudiation of the stipulation until twenty months after appellant was acquainted with its content.

In addition to his failure to repudiate, appellant accepted the benefits of the settlement with full knowledge of its terms. It is a fundamental principle of the law of agency that such action is an election to ratify

the unauthorized act and that by such election the principal is bound: *Necl, Insurance Commissioner v. Crittenden,* 353 Pa. 201, 204, 205, 44 A. 2d 558; *Blumberg v. Broad Street Trust Company,* 329 Pa. 471, 198 A. 27; *Presbyterian Board v. Gilbee,* 212 Pa. 310, 314, 61 A. 925, where this Court said, "It is repugnant to every sense of justice and fair dealing that a principal shall avail himself of the benefits of an agent's act, and at the same time repudiate his authority."; Restatement, Agency, Sections 98, 99; Cf. *Gum, Incorporated v. Felton,* 341 Pa. 96, 17 A.2d 386.

The averments of appellant's petition taken in connection with the record facts before the Court fail to set forth grounds for the relief prayed for. On the contrary, it affirmatively appeared therefrom that appellant was not entitled to have the stipulation set aside. Under the circumstances the lower court did not abuse its discretion in disposing of the rule without hearing.

The order refusing the rule is affirmed at appellant's cost.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

I would reverse the lower court's refusal to grant to the petitioner (appellant here) a rule to show cause why the stipulation entered into by his attorney in his absence should not be set aside. All that the appellant asked for was an opportunity to show that the stipulation in question was made without authority from him, and did not accord with his rights or intentions.

The lower court's refusal to grant the rule to show cause and this Court's affirmance of his refusal will forever enshroud the litigation in this case with doubt as to whether justice was not denied a litigant pleading for a chance to be heard. The appellant, in a sworn pe-

tition, averred that at a conference between his lawyer and the defendant company's lawyers, (held in a room adjoining the Court) the officers of the defendant corporation were apparently present but that the appellant was denied admittance. The appellant further averred in his petition that, during his absence, a stipulation was entered into and that this stipulation was not exhibited to him until later on in a restaurant and that on that very day he voiced objections to the stipulation, asserting it did not represent what he had agreed to. The petition also declared that the appellant was willing to return the $5,000 paid by the defendant, if the Court would set aside the stipulation and settlement.

So far as this action is concerned, the statements made by the appellant in his petition must be accepted as true since they were sworn to and were *not denied* by the defendant. In fact, the defendant did not even file an answer to the petition. The lower court, without receiving any answer to the petition, without conducting any hearing and without conducting any recorded inquiry, refused the rule with the declaration that the appellant's "present satisfaction may be due to the fact that his machinery was not readily salable as he had hoped." *"May be due"* is a strange phrase in a court's decision which is supposed to be based upon established facts. It is also sardonic language with which to shut definitively the doors of the courthouse in the face of a litigant.

It is possible, and certainly excusable, for a judge to err in his appraisal of evidence adduced before him, but it is intolerable for a court to *guess* at facts, when a simple hearing can establish them conclusively. There is no excuse for groping in the darkness of conjecture when a simple lifting of the blind will reveal the circumstances of reality.

If, as the lower court seems to suggest, the appellant is merely litigious, a short hearing would have punctured the balloon of his pretensions. But it is possible that, despite whatever the court may have thought of the appellant as a person, he may have been imposed upon in the settlement of his lawsuit, which settlement took place outside his presence and which he never signed. Even a moral bankrupt can be the victim of an intentional plot or design or of an accident, and he is entitled to his day in court.

On April 23, 1951, the lower court said: "The Court *is of the opinion* that the plaintiff did not object to the settlement and was perfectly satisfied until he found that he could not raise the money to repurchase the machinery." (Emphasis supplied) There can be no question that the learned Judge below believed this opinion to be true or he would not have stated it, but unfortunately there is nothing in the record to substantiate his surmise. A hearing could have placed the prop of substantiation under the bough of his surmise, but without a hearing the surmise falls to the ground emptily.

The majority decision of this Court says that the appellant agreed to a settlement of "$5,000 and the machinery," but nowhere does it appear that he agreed to a settlement *to pay* $25,308.00 for the machinery and that he was to pay that enormous sum *within 90 days.*

The majority opinion states that the appellant has in effect been guilty of laches in asserting tardily any inequity in the settlement but the petition (whose assertions were never denied) declared he, the petitioner, voiced his objections on the *same day* the stipulation was signed, and further that he directed his attorney *not* to cash the $5,000 check received. Also that he stands ready to return the $5,000.

At the oral argument, present counsel for the appellant explained that he had delayed in filing the petition for the appellant because he was hesitant to embarrass the previous counsel (the one who had made the settlement.)

And so, between the Scylla of his present attorney's deference to the previous attorney, and the Charybdis of the lower court's deference to the defendant (which it believed was being persecuted) the appellant has drifted out into the open sea of indecisive, irresolute and indefinitive adjudication.