## Panel House, Inc. v. Southeast National Bank

*Michael L. Murphy,* for plaintiff.
*Stephen L. Palmer,* for defendant.
*Filindo B. Masino,* for additional defendants.

SURRICK,*J.,* February 12, 1981—This case is an action in assumpsit and trespass for the recovery of certain funds, $1944.03, that it was alleged were improperly paid out of plaintiff's bank account no. 350758-9 at Southeast National Bank. Defendant, Southeast National Bank, joined Donald G. Di-Loretto and Edwin R. Wisner, a/k/a E.R. Wisner, as additional defendants. On April 24, 1980, after trial by judge without a jury, this court found in favor of defendant and additional defendants and against plaintiff. Plaintiff filed exceptions to this order which are now before this court for disposition.

The facts as adduced at trial were basically as follows. Mr. Edwin R. Wisner was at all times relevant hereto the president and sole stockholder of plaintiff, Panel House, Incorporated. The business of said corporation was conducted from an address in the Drexeline Shopping Center, 50-50 or 50-40 State Road, Drexel Hill, Pa. In September or October of 1974 Mr. Wisner was negotiating with his landlord, Peter S. Mozino, for a renewal of plaintiff's lease at the aforesaid location. On October 7, 1974 Mr. Wisner suffered a heart attack. As a result of his heart attack, Mr. Wisner and/or his son made arrangements with additional defendant, Donald G. DiLoretto, a part-time employe of the corporation, whereby Mr. DiLoretto would operate the business of Panel House, Incorporated, in Mr. Wisner's absence. Mr. DiLoretto was made vice president of Panel House, Incorporated, given authority to write checks on the corporate account at

Southeast National Bank and given complete authority to operate all aspects of plaintiff's business.

On October 7, 1974 Mr. DiLoretto signed a lease with Mr. Mozino for the premises in the Drexeline Shopping Center, from which Panel House, Incorporated, was doing business. The lease was in the name of Donald G. DiLoretto, t/a Panel House and not in the name of Panel House, Incorporated. From the time of that lease up until July 1975, Panel House, Incorporated, continued to operate out of the said location. In the summer of 1975 the landlord padlocked the premises for non-payment of rent. The landlord also confessed judgment on the lease and filed a garnishment action against defendant, Southeast National Bank. Defendant, as a result of the garnishment, turned over funds from the corporate account of plaintiff to Mr. Mozino, pursuant to a writ of execution in garnishment filed in the matter of Peter S. Mozino v. Donald G. DiLoretto, t/a "The Panel House," no. 75-9949, in the Court of Common Pleas of Delaware County.

Plaintiff makes two arguments in support of its exceptions: (1) that the court erred in finding in favor of defendant because there was no legal justification for the payment of additional defendant DiLoretto's debt out of plaintiff's corporate account, the plaintiff and additional defendant being separate entities and (2) that the court erred in finding a proper payment out of the corporate account of plaintiff when the Pennsylvania Rules of Civil Procedure provide that only funds of a defendant may be garnished, defendant in this instance being Donald G. DiLoretto and not Panel House, Incorporated. Defendant, on the other hand, argues

(1) that the court should pierce the corporate veil or disregard the corporate fiction because of the identity between the parties so as to prevent injustice and protect the bank as an innocent third party and (2) that plaintiff, having received the benefit of the lease, has ratified the lease obligation and is now estopped from denying the lease as a corporate obligation. We are satisfied that defendant's second argument is controlling.

It is of particular significance in determining this matter that Mr. Wisner, the president, secretary, treasurer and sole shareholder of plaintiff, upon becoming ill in October of 1974, turned over the complete operation of plaintiff corporation to Donald G. DiLoretto and gave Mr. DiLoretto complete authority to operate plaintiff corporation in his absence.

Mr. Wisner testified as follows in this regard:

"Q. Thereafter did you make, after your heart attack, any additional oral arrangements or have any oral discussions with Mr. DiLoretto regarding the continuation of the business or any arrangements you might have had with him for his continuing business?

A. My son came east and made an arrangement with Don to continue operating the store and I in turn gave him permission to sign checks for—

Q. The corporation?

A. The corporation for to pay suppliers, rent, and anything else.

Q. Okay, and you did have an account with Southeast National Bank, corporate account being number 350758-9; is that correct?

A. Yes.

Q. That remained the same throughout all of this; is that correct?

A. Yes, right.

Q. DiLoretto then had the authority to write checks on that account?

A. That's right.

Q. Did Panel House, Inc. or you—I think I have asked this—enter into a lease with Mozino after your heart attack or before your heart attack, right before?

A. No, sir.

Q. Did the business continue to be operated at that location?

A. Yes, sir.

Q. What was your understanding of how that was being done?

A. Well, Don was in charge because I was sick."

As a result of this agreement, Mr. DiLoretto operated the business of plaintiff corporation from October, 1974 through July, 1975.

Moreover, with regard to the question of the lease which Mr. Wisner had been negotiating with Mr. Mozino, prior to his heart attack, Mr. Wisner testified as follows:

"THE COURT: Did you have any discussions with Mr. DiLoretto concerning the lease while you were out with your heart attack?

THE WITNESS: Long after the fact.

THE COURT: Well, when you put him in charge of the business, did you anticipate that the business would continue?

THE WITNESS: Yes.

THE COURT: Did you anticipate that it would continue at the address at the Drexeline Shopping Center?

THE WITNESS: Yes.

THE COURT: You knew that some arrangements would have to be made with Mr. Mozino with regard to the lease?

THE WITNESS: Yes.

THE COURT: Did you anticipate or authorize Mr. DiLoretto to make such an arrangement?

THE WITNESS: Did I? I'm sorry.

THE COURT: Did you make, did you authorize Mr. DiLoretto to make such an arrangement?

THE WITNESS: No.

THE COURT: Did you tell him not to make such an arrangement or did you just not say anything about it?

THE WITNESS: I didn't say anything. I was pretty sick.

THE COURT: That is because of your physical condition?

THE WITNESS: Yes."

As above mentioned, Mr. DiLoretto did, in fact, execute a lease with Mr. Mozino for the premises at Drexeline Shopping Center. The lease was not in plaintiff's name, however, it describes the business to be conducted as "a retail home decorating supply store" which is a description of plaintiff's business. Plaintiff continued to operate its business out of the leased premises and, in fact, rent payments were made to Mr. Mozino out of plaintiff's corporate account.

In the case of Apex Financial Corporation v. Decker, 245 Pa. Superior Ct. 439, 443, 369 A. 2d 483 (1976), the Superior Court stated the law of agency, which governs the instant situation, as follows:

"The liability of a principal to third parties for the act of an agent must rest on (1) express authority, or that which is directly granted; (2) implied authority, to do all that is proper, usual and necessary to the exercise of the authority actually granted;

(3) apparent authority, as where the principal holds one out as agent by words or conduct, and (4) agency by estoppel. Passarelli v. Shields, 191 Pa. Super. 194, 156 A. 2d 343 (1959)."

Under the circumstances, at the very least, Mr. DiLoretto had implied authority to renegotiate the subject lease for plaintiff. Certainly, if Mr. Di-Loretto was to "operate" the plaintiff corporation, given the fact that plaintiff corporation's lease was about to expire, such negotiations were a reasonable and necessary exercise of the authority expressly given to Mr. DiLoretto.

Although the lease does reflect the fact that Mr. DiLoretto signed as lessee without mentioning either plaintiff corporation or his position as vice-president thereof, it should be noted that our courts have held that whether or not an instrument reflects a corporate obligation is a question which cannot be decided by simply observing the method by which the subject instrument was executed: Lebowitz v. Keystate Insurance Agency, Inc., 198 Pa. Superior Ct. 495, 182 A. 2d 289 (1962); Pre-Stress Structures, Inc. v. Bargain City, U.S.A., 412 Pa. 262, 194 A. 2d 177 (1964).

When plaintiff contends that defendant has paid an individual debt of Mr. DiLoretto's with corporate funds, it is in effect repudiating the agency of Mr. DiLoretto in executing the subject lease which was at all times used for the benefit of plaintiff corporation. It has long been law in Pennsylvania that the courts will not allow repudiation of an action by an agent on behalf of a principal from which the principal derived the benefit: Emperee v. Meyers, 440 Pa. 430, 437, 269 A. 2d 731 (1970). The Supreme Court in Emperee, supra, stated the following in this regard:

"Because Iris Meyers, the president and sole stockholder, did not have the expertise to manage a bar and restaurant, it was necessary for the corporation to employ someone else, like appellee, to do so. To obtain appellee's talents, the note became necessary. The active management of a corporation, not its board, traditionally has had power over employee relationships. Therefore, we believe the president of corporate appellant had, if not express certainly implied, authority to execute the note on behalf of corporate appellant. Moreover, receipt of the note did induce appellee to quit his business, join the appellants and serve as manager of the bar and restaurant for a period of thirteen months. We have often said that a corporation cannot repudiate the agency by which it secured the benefit it has enjoyed. McClain F. Corp. v. Lineinger, 341 Pa. 364, 19 A. 2d 478 (1941); Blumberg v. Broad St. Tr. Co., 329 Pa. 471, 198 A. 27 (1938)."

Moreover, Mr. Wisner, as president of plaintiff, never attempted to repudiate the lease on behalf of the corporation. In fact, he negotiated and obtained a release from the landlord of all liability under the lease. Again we must observe that, from the beginning of this lease in October, 1974 up until July, 1975, plaintiff corporation at all times was operating its business out of the leased premises. Plaintiff, therefore, was at all times the sole beneficiary of the subject lease.

In the case of Yarnall v. Yorkshire Worsted Mills, 370 Pa. 93, 96, 97, 87 A. 2d 192 (1952), the Supreme Court stated the following in this regard:

"In addition to his failure to repudiate, appellant accepted the benefits of the settlement with full

knowledge of its terms. It is fundamental principle of the law of agency that such action is an election to ratify the unauthorized act and that by such election the principal is bound: Neel Insurance Commissioner v. Crittenden, 353 Pa. 201, 204, 205, 44 A. 2d 558; Blumberg v. Broad Street Trust Company, 329 Pa. 471, 198 A. 27; Presbyterian Board v. Gilbee, 212 Pa. 310, 314, 61 A. 925, where this Court said, 'It is repugnant to every sense of justice and fair dealing that a principal shall avail himself of the benefits of an agent's act, and at the same time repudiate his authority.' Restatement, Agency, Sections 98, 99; Cf. Gum, Incorporated v. Felton, 341 Pa. 96, 17 A. 2d 386."

Since the underlying debt of the judgment which defendant satisfied with corporate funds was clearly a debt incurred by reason of the conduct of a corporate officer, solely for the benefit of the corporation, plaintiff cannot be said to have suffered any injury for which it can recover in the instant case. This would be so regardless of whether defendant's conduct was negligent in failing to follow proper garnishment procedures or in paying what appeared on its face to be an individual debt out of the corporate account.

For the foregoing reasons, we enter the following

## ORDER

And now, February 12, 1981, upon consideration of plaintiff's exceptions to the decision and order of this court dated April 25, 1980, it is ordered and decreed that the said exceptions be and the same are hereby dismissed and the decision and order of April 25, 1980, is affirmed.