J-A12035-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| ETHEL BANSLEY F/K/A ETHEL CRISALLI, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| JOHN APPLETON, ESQ. AND NOGI, APPLETON, WEINBERGER & WREN, P.C., | |
| Appellee | No. 809 MDA 2014 |

Appeal from the Order entered April 9, 2014,
in the Court of Common Pleas of Lackawanna County,
Civil Division, at No(s): 12 CV 1996

BEFORE:  BOWES, DONOHUE, and ALLEN, JJ.

MEMORANDUM BY ALLEN, J.:                               **FILED MAY 04, 2015**

Ethel Bansley, f/k/a Ethel Crisalli, ("Appellant"), appeals from the trial court's order granting summary judgment in favor of her former counsel, John Appleton, Esquire ("Attorney"), and his firm, Nogi, Appleton, Weinberger & Wren, P.C. ("Attorneys").  We affirm.

A detailed recitation of the procedural history of this case, before both the trial court and this Court, is warranted.  The trial court explained:

> In accordance with the Appellant's complaint, the [instant action] arises from an action in Wayne County, Sum[n]er v. Hartley (06 CV 509) (hereinafter referred to as the "underlying action").  [Appellant's] Amended Complaint at ¶ 5.  This underlying action involves an Action in Ejectment and Declaratory Judgment and a Petition for Contempt.  Id.  In August 2006, [one of the] Plaintiff[s] in the underlying action, Lisa Sum[n]er, sought an order of ejectment against [Appellant] [and] a Donald Bansley, and a Elizabeth Hartley.  [The] Defendants in the underlying action, which included Appellant in this matter, alleged use of Little Beach Pond, and the Plaintiffs in

the underlying action sought to prohibit the use of any waters of Little Beach Pond by the Appellant. Id. at ¶ 6. On January 13, 2009, the Court of Common Pleas issued its Order[, which was docketed on January 14, 2009,] granting the Appellant the right to use the waters of Little Beach Pond *only* to the extent of the waters above the pond-bed owned by the Appellant, in accord with her deed. Id. at ¶ 7. [Specifically, the January 14, 2009 order included findings of fact that the "boundary line" of Appellant's property "includes the southerly shore of the Pond," that "the Pond has expanded approximately ten (10) to twelve (12) feet into the southern boundary," and that Appellant "placed a dock on the portion of the Pond which has expanded the ten (10) to twelve (12) and which is within their property line." Order, 1/14/09, at 1-2.] On September 18, 2009, the Plaintiffs in the underlying action filed a Petition for Contempt claiming the Appellant, and her guests, violated the Order issued by the Court by using the waters beyond the boundary line previously instituted by the court, via order. Id. at ¶ 8. In response, the Appellant retained [Attorneys] in the underlying action, … to represent her in the Contempt proceedings. [Attorney's] Transcript, pg. 68, lns. 8-24, pg. 69 lns. 1-12, pg. 70 lns. 2-3; [Attorneys'] Exhibit B Attached to Motion for Summary Judgment. During the hearing on the Petition for Contempt, [Attorney] stipulated that Appellant violated the Order by using the waters above the pond-bed beyond the scope of their boundary line to the mid-point, after being presented with a picture showing the Appellant doing such. [Appellant's] Amended Complaint at ¶ 9. Appellant was therefore found in contempt of the previously issued court order and therefore was ordered to pay approximately $13,000.00. Id. at ¶ 10; *See Also* [Attorney's] Exhibit D Attached to Motion for Summary Judgment.

Trial Court Opinion, 8/22/14, at 3-4.

In affirming the trial court's March 31, 2010 contempt order, this Court

observed:

[] Following a non-jury trial, the trial court issued an opinion and order on January 14, 2009. The trial court discounted [the underlying plaintiffs'] position that [Appellant and her co-defendants] did not have the right to use any portion of Little Beach Pond, but it specifically ruled that [Appellant and

her co-defendants] did not have the right to use the entire waterway, as they had requested. The trial court noted that originally [Appellant's] property abutted the pond, but that the pond had expanded approximately ten to twelve feet onto their land. The trial court ruled that [Appellant and her co-defendants] had the right to use the portion of the pond that had expanded onto and that was above their property line, as described in their deeds. Thus, the January 14, 2009 order provides, "The Defendants' Counterclaim for free and uninterrupted use of the waters of Little Beach Pond is GRANTED to the extent and only to the extent of the use of those waters above the pond-bed owned by [Appellants] in accord with their Deed." Opinion and Order, 1/14/09, at 3. An appeal from that order was discontinued.

\*\*\*

[Appellant and her co-defendants] challenge the validity of the January 14, 2009 order and assert that they have the right to use Little Beach Pond to its midpoint under "precedential case law from the Pennsylvania Supreme Court[.]" Appellant's Brief at 8. However, we are not permitted to examine the propriety of the January 14, 2009 order because [Appellant and her co-defendants] failed to appeal from that adjudication. Under 42 Pa.C.S. § 5505, an order becomes final and can no longer be modified thirty days after its entry, unless an appeal has been filed. []

On January 14, 2009, the trial court herein entered a final order in this ejectment action and adjudicated the countervailing claims of the parties regarding [Appellant and her co-defendants'] right to use Little Beach Pond. That order provided that [Appellant and her co-defendants] can use only the portion of Little Beach Pond that was above their property line, and the adjudication indicated that the property line was ten to twelve feet into the pond. The appeal from the January 14, 2009 order was discontinued on March 12, 2009, and was final when these contempt proceedings were initiated in September 2009. [Appellant and her co-defendants'] attempt to attack the validity of the adjudication by reference to Supreme Court precedent is unavailing as their position should have been raised in a direct appeal from the January 14, 2009 decision. []

\*\*\*

- 3 -

[] The order, contrary to [Appellant and her co-defendants'] position, was clear and precise. It stated unequivocally that they could not utilize Little Beach Pond except the portion that was within their property line, which is delineated in the adjudication as being between ten to twelve feet into the pond. Their acts were volitional, as established by the photographs and testimony at the hearing.

\*\*\*

[] [Appellant and her co-defendants] knew that the trial court concluded that their property line was between ten to twelve feet into the pond, and they admittedly used the waterway beyond that point. Hence, we conclude that the record supports the finding that [Appellant and her co-defendants'] violation of the order was wrongful despite the fact that [they] were not prosecuted for criminal trespass. We therefore cannot discern an abuse of discretion by the trial court in holding them in contempt and awarding [the underlying plaintiffs] attorneys' fees.

**Sumner, et al. v. Hartley, et al.,** 15 A.3d 527 (Pa. Super. 2010) (unpublished memorandum) at 2; 4-5; 8 (footnote omitted); *appeal denied* 20 A.3d 1212 (Pa. 2011).

With regard to the instant action, the trial court explained:

This claim was commenced by [Appellant] on March 27, 2012 by filing a Praecipe for Writ of Summons. After seeking, and then receiving, an extension for a filing of her complaint, the Appellant filed the complaint on or about June 21, 2012. The Appellant alleged in the complaint there was professional negligence, breach of contract, breach of fiduciary duty, and intentional infliction of emotional distress (hereinafter "IIED") by [Attorneys]. Thereafter, the Appellant filed a Certificate of Merit as to [Attorneys], which was received by them on July 12, 2012. Pursuant to, [Attorneys] filed preliminary objections, a brief in support thereof, and a praecipe for assignment challenging the legal and factual sufficiency of the Appellant's complaint on July 23, 2012. Appellant's counsel then contacted [Attorneys'] counsel indicating his intention to file a motion with the court seeking leave to withdraw as Appellant's counsel. On August 28,

- 4 -

2012, Appellant's counsel filed his Motion for Leave to Withdraw as counsel asserting, *inter alia*, that "(1) counsel can no longer prosecute this matter in good faith; (2) counsel no longer believes the necessary proofs underlying required can be discovered or otherwise obtained towards this matter's success; . . .." (Exhibit F of [Attorneys'] Motion for Summary Judgment).

Around the same time of this aforementioned filing, the Appellant's counsel also filed Appellant's First Amended Complaint in what was perceived by [Attorneys] in this case as being an effort to preserve the Appellant's "questionable claim" in response to the Preliminary Objections filed by [Attorneys]. Thereafter, on October 18, 2012, Senior Judge Harold Thompson entered an order denying Appellant's Counsel's Motion to Withdraw. Then, on October 26, 2012, [Attorneys] filed Preliminary Objections to the Amended Complaint together with a Brief in Support of the Preliminary Objections and a Praecipe for Assignment of Disposition of the Preliminary Objections. On November 14, 2012, Appellant filed Preliminary Objections to [Attorneys'] Preliminary Objections. Thereafter, on November 26, 2012 [Attorneys] filed a Brief in Opposition to Appellant's Preliminary Objections to [Attorneys'] Preliminary Objections to Appellant's First Amended Complaint. Then, on December 19, 2012, Appellant filed a Response in Opposition to [Attorneys'] Preliminary Objections to [Appellant's] First Amended Complaint. On January 23, 2013, this Court issued an Order sustaining in part and overruling in part the Preliminary Objections. Then, on February 8, 2013, [Attorneys] filed an Answer with New Matter to Appellant's Amended complaint. Thereafter, on February 12, 2013, Appellant filed a Reply to New Matter. [Attorneys] asserted at the time of the hearing on the Motion for Summary Judgment (hereinafter "MFSJ") in this matter that discovery was concluded, and as such their MFSJ was timely and ripe for disposition. This court found such to be true, and heard argument, as well as reviewed the file in full.

Trial Court Opinion, 8/22/14, at 1-2.

On April 9, 2014, the trial court granted summary judgment in favor of Attorneys. On April 30, 2014, Appellant filed her notice of appeal. Appellant and the trial court have complied with Pa.R.A.P. 1925.

- 5 -

On appeal, Appellant queries:

> Whether the Court of Common Pleas erred in holding [Appellant] did not state triable claims for: (a) legal malpractice negligence; (b) legal malpractice breach of contract; (c) breach of fiduciary duty; and (d) entitlement to damages – otherwise requiring the denial of summary judgment?

Appellant's Brief at 8.

In summarizing her argument, Appellant asserts:

> [Appellant] sufficiently adduced evidence to preclude the entry of summary judgment which was necessarily predicated on the incorrect holdings that [Appellant] was rightfully held in contempt in the underlying action notwithstanding [Attorney's] unilateral preclusion of her testimony at the contempt proceedings and further, [Attorney's] unilateral stipulation to [Appellant's] violation of the ejectment order giving rise to the contempt proceedings — all despite his conflict of interest underlying.
>
> [Appellant] was not in violation of the order giving rise to the contempt proceedings as would have been elucidated to the contempt court but for [Attorney's] aforesaid misconduct.

Appellant's Brief at 12.

In reviewing Appellant's challenge to the entry of summary judgment,

we recognize:

> Our scope of review … [of summary judgment orders] … is plenary. We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law will summary judgment be entered.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of his cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Thus a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury. Upon appellate review we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate Court may disturb the trial court's order only upon an error of law or an abuse of discretion.

***Alexander v. City of Meadville,*** 61 A.3d 218, 227 (Pa. Super. 2012)

(internal citation omitted).

Relative to legal malpractice:

'An action for legal malpractice may be brought in either contract or tort.' *Garcia v. Community Legal Servs. Corp.,* 362 Pa.Super. 484, 524 A.2d 980, 982 (1987). The elements of a legal malpractice action, sounding in negligence, include: (1) employment of the attorney or other basis for a duty; (2) failure of the attorney to exercise ordinary skill and knowledge; and (3) that such failure was the proximate cause of the harm to the plaintiff. *Bailey v. Tucker,* 533 Pa. 237, 621 A.2d 108, 112 (1993). With regard to a breach of contract claim, "an attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large." *Id.* at 115. *See also Gorski v. Smith,* 812 A.2d 683, 694 (Pa. Super. 2002) (citing *Bailey* and noting that "when an attorney enters into a contract to provide legal services, there automatically arises a contractual duty on the part of the attorney to render those legal services in a manner that comports with the profession at large").

***Wachovia Bank, N.A. v. Ferretti,*** 935 A.2d 565, 570-571 (Pa. Super. 2007).

Here, the trial court rebutted Appellant's claims of error at length:

In the case at hand Appellant could not, and did not, present the [required evidence] to this court to withstand a MFSJ. The Appellant was given a clear order from the court, in the underlying action, on the parameters in which the water in and around their property could be used. The Appellant not only did not comply with the order, but there was clear photo documentation displaying the Appellant in their non-compliance. Therefore, [Attorney's] stipulating to the violation, when presented with such a clear and undisputable pieces of evidence, did exercise ordinary skill and knowledge in his profession. Furthermore, since there was no negligence on the part of [Attorney] in making the aforementioned stipulation, then the harm the underlying case's decision had on the Appellant was by no means the proximate cause of anything done by [Attorney]. Instead, the Appellant's actions were the proximate cause of the aforementioned damages that [Appellant] suffered.

Lastly, there is also the "case within the case" doct[rine] to consider [in legal malpractice actions]. In this matter, even if this could get past the standard for legal malpractice/negligence in this state, it would not be able to sustain the "case within a case doctrine." The Appellant disobeyed a court order, and such was encapsulated in photographic evidence. Therefore, in a contempt proceeding, there is no merit to the allegation that the Appellant's case would have triumphed by a preponderance of the evidence, with photographic evidence of the Appellant in violation, but for the [Attorney's] actions.

\*\*\*

The Appellant in this matter cannot prove there was legal malpractice/negligence by [Attorney], and therefore cannot prove there was a breach of a duty imposed by the contract between the parties. [Attorney's] actions in this matter were within his knowledge and discretion in his practice as an attorney, and in no way rise to a level where a breach of a duty to the Appellant occurred. Furthermore, the Appellant cannot

prove the damages sustained in the underlying case were a result of this alleged breach within a reasonable certainty, since they cannot prove there was a breach at all.

It has been established that "the elements the plaintiff must prove in claim of breach of fiduciary duty are: '(1) **that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed**; (2) that the plaintiff suffered injury; and (3) that the agent's failure to act solely for the plaintiffs benefit ... was a real factor in bring[ing] about plaintiffs injuries [.]'" McDermott v. Party City Corp., 11 F. Supp. 2d 612, 626 (E.D. Pa. 1998) citing Pa. S.S.J.I. § 4.16 (1991) (emphasis added).  Furthermore, in Pennsylvania "common law imposes on attorneys the status of fiduciaries vis á vis their clients; that is, attorneys are bound, at law, to perform their fiduciary duties properly.  Failure to so perform gives rise to a cause of action.  It is 'actionable' threatened failure to so perform gives rise to a request for injunctive relief to prevent the breach of duty." Maritrans CP Inc. v. Pepper, Hamilton & Scheetz, 602 A.2d 1277, 1283 (Pa. 1992).

In this matter the Appellant cannot show that [Attorney] acted negligently or in bad faith, and therefore cannot prove there was a breach of a fiduciary duty.  In the aforementioned analysis, as to if there was legal malpractice/negligence in this matter, the court will rely on the same argument as stated previously.  Thus, since no legal malpractice/negligence can be proven on the part of [Attorney], a breach of fiduciary duty is not present.  Therefore, even with [Attorney] as an attorney with a status of a fiduciary via á vis to the Appellant, there is no underlying showing of negligence and/or bad faith on the part of [Attorney], and therefore there was not a prima facie case for this cause of action presented to this court.

In [Appellant's] Amended Complaint, [Appellant] alleges [she] suffered "great pain and agony, humiliation, embarrassment, and emotional distress." [Appellant's] Amended Complaint ¶ 13.

Intentional Infliction of Emotional Distress (hereinafter, "IIED") requires a Plaintiff to show that the Defendant/Tortfeasor is "[o]ne who by **extreme and outrageous conduct** intentionally or recklessly causes severe emotional distress to [the Plaintiff; and therefore] is subject to liability for such

emotional distress . . . ." <u>Taylor v. Albert Einstein Med. Ctr.</u>, 562 Pa. 176, 180, 754 A.2d 650, 652 (2000) *citing* Restatement (Second) of Torts § 46(2) [(emphasis added)]. Although Pennsylvania common law has recognized IIED as a cause of action it is only granted when "the emotional distress has created **medically-documented physical symptoms.**" <u>Armstrong v. Paoli Mem'l Hosp.</u>, 633 A.2d 605, 608 (Pa. Super. 1993) [(emphasis added)]. Therefore, in absence of such "medically-documented physical symptoms" or injuries, the Plaintiff cannot recover.

The presentation of [an IIED] cause of action in this matter is totally unfounded, and frivolous. In this section, the court will rely in part upon the arguments previously presented in this memorandum to support this argument against a case of IIED sustaining a MFSJ in this matter. The Appellant, by no manner could prove, or did provide, evidence to this court that [Attorney] went about "extreme or outrageous" conduct to "intentionally harm" the Appellant. This court found, by the argument and evidence provided, [Attorneys] went about their job with the requisite knowledge and experience required in the legal profession. At no time did anything [Attorneys] did in their representation of the Appellant illustrate even a minutia of outrageous or extreme conduct made to intentionally hurt the Appellant. Instead, [Attorneys'] actions were professional, and typical of the profession. Furthermore, the Appellant did not provide to this court any documentation of the required medically-documented physical symptoms necessary to present a claim of IIED in Pennsylvania. Therefore, even if IIED was present in this matter, [Appellant] could not recover absent of such proof.

Trial Court Opinion, 8/22/14, at 7-11.

Our review of the record comports with the trial court's reasoning. Appellant's own deposition testimony supports Attorney's entry into the stipulation that Appellant used Little Beach Pond beyond the 10-12 feet boundary set forth in the January 14, 2009 order, as well as Attorney's decision to forego Appellant's testimony at the hearing, and to focus instead

on arguing that Appellant's actions were not volitional. During her deposition, Appellant admitted that she entered Little Beach Pond "subsequent" to the January 14, 2009 order. N.T., 3/11/13, at 62. Appellant excused her entry and maintained it was precipitated by the actions of the Sumner plaintiffs. Appellant testified, "I used the pond after I had seen them in their boat on my shoreline doing something. I went in my boat with one of my friends to photograph my shoreline and to try to determine what they were doing and that's when I found that they had put stakes on my land and I took the stakes out." *Id.* at 62-63. Appellant further admitted she entered the pond "65 feet [to] 70 feet[.]" *Id.* at 63. Appellant's entry clearly exceeded the 10-12 feet boundary. Appellant additionally testified she allowed a friend to enter Little Beach Pond. *Id.* at 67. Appellant acknowledged that the Sumner plaintiffs filed a contempt action following these entries into Little Beach Pond. *Id.* at 69. Accordingly, Appellant's testimony shows that Attorney did not err in stipulating to Appellant's violation of the January 14, 2009 order, and foregoing Appellant's testimony at the hearing.

Appellant erroneously focuses on the stipulation as the basis for the trial court's finding that she was in contempt of the January 14, 2009 order. Appellant disregards that our Court previously determined that the trial court did not abuse its discretion in finding that Appellant was in contempt of the January 14, 2009 order, because Appellant's acts of trespass "were **volitional, as established by the photographs and testimony at the**

- 11 -

**hearing**." **Sumner, supra,** at 7 (emphasis supplied). In addition to the stipulation, we cited the following evidence:

> On September 16, 2009, [the underlying plaintiffs] filed a petition for contempt, alleging that [Appellant] continued to use the entirety of Little Beach Pond in violation of the January 14, 2009 order. At the hearing on the matter, Ms. Hartley[, Appellant's sister,] acknowledged receiving a copy of the January 14, 2009 order that prohibited her from using any portion of the pond that was not above her property and that she was aware that the trial court had ruled that the pond in question had expanded approximately ten to twelve feet onto her property. Then she admitted that she and her guests had been "out in the pond beyond the 12 feet, yes we have." N.T. Hearing on Contempt, 2/4/10, at 7. [The underlying plaintiffs] then presented witnesses who testified that the other two defendants also had violated the order. Finally, the court was presented with a stipulation entered by [Appellant and her co-defendants] that they had utilized the pond, in violation of the order, to the midpoint of that waterway. *Id*. at 76. [The underlying plaintiffs] also introduced photographic evidence of [Appellant and her co-defendants'] violation of the trial court's decree. Based upon this evidence, the trial court entered an order finding [Appellant and her co-defendants] in contempt and ordering them to pay [the underlying plaintiffs'] attorneys' fees.

**Sumner, supra,** at 3.

We further rejected Appellant's arguments regarding her lack of wrongful intent:

> [] The order, contrary to [Appellant and her co-defendants'] position, was clear and precise. It stated unequivocally that they could not utilize Little Beach Pond except the portion that was within their property line, which is delineated in the adjudication as being between ten to twelve feet into the pond. Their acts were volitional, as established by the photographs and testimony at the hearing.
>
> [Appellant and her co-defendants'] arguments on appeal relate to whether they acted with wrongful intent. First, they

- 12 -

posit that the January 14, 2009 order was legally incorrect and, thus, their intent in violating the order was not wrongful. [Appellant's] Brief at 11, 12. [They] maintain that the order in question was contrary to law and that they have a legal right to use Little Beach Pond to its midpoint under binding Supreme Court precedent. We hold, however, that this position should have been raised in a timely appeal from the January 14, 2009 order. [Appellant and her co-defendants'] averments are not a valid defense to their disregard of a final and binding adjudication when it was violated.

[Appellant and her co-defendants] also claim that their disregard of the order was not wrongful because when police were called about trespass incidents, they "determined that no trespass by [Appellant and her co-defendants] occurred and instructed … [them] to enjoy the use of the pond." [Appellant's] Brief at 13. The first police report indicated that the police read the January 14, 2009 order, could not determine where the property line under the pond was located, and decided not to prosecute [Appellant and her co-defendants] for trespass. The second police report noted that, in accordance with the order, [Appellant and her co-defendants] did have access to the lake on their side of the waterway and thus, [Appellant and her co-defendants] could use the lake.

Nothing said by police should have given [Appellant and her co-defendants] a reasonable belief that they were permitted to violate the order in question. The reports indicate nothing more than police had been called to file criminal trespass charges and were unable to determine whether a criminal trespass occurred. Their determination was not based upon a conclusion that [Appellant and her co-defendant] did not violate the order. Police merely knew that [Appellant and her co-defendants] were entitled to use some portion of the pond and could not determine from looking at the pond where [their] property line was located. The state troopers were there to investigate whether there was a commission of the crime of criminal trespass, not to interpret an order.

However, [Appellant and her co-defendants] knew that the trial court concluded that their property line was between ten to twelve feet into the pond, and they admittedly used the waterway beyond that point. Hence, we conclude that the record supports the finding that [Appellant and her co-

- 13 -

defendants'] violation of the order was wrongful despite the fact that [they] were not prosecuted for criminal trespass.

***Sumner, supra,*** at 6-8.

Thus, we find that the record belies Appellant's contention that Attorney erred in stipulating that she entered Little Beach Pond beyond the 10-12 feet boundary. Indeed, as the trial court observed, the Sumner plaintiffs produced photographic evidence of Appellant's entry into Little Beach Pond beyond the 10-12 feet boundary. The record refutes Appellant's assertion that the trial court would not have found Appellant in contempt of the January 14, 2009 order but for Attorney's stipulation.

Further, while Ms. Hartley testified that the stipulation overstated the extent of Appellant's entry into Little Beach Pond by incorrectly indicating Appellant entered to the midpoint of the waterway, Ms. Hartley nonetheless testified that "to be precise … we have [been] out in the pond beyond the 12 feet, yes we have." N.T., 2/4/10, at 7. Ms. Hartley's testimony did not contradict the stipulation that Appellant entered beyond the 10-12 feet boundary set forth by the January 14, 2009 order. Although Appellant disavows the stipulation, she failed to express any disagreement at the time of its entry. N.T., 11/23/09, at 2; 4-5; 10; 12; 15. Indeed, Appellant did not oppose the stipulation even when the trial court addressed the parties and entreated them to "come to an agreement." ***Id.*** at 18. We thus find that Appellant ratified the stipulation by failing to promptly repudiate it.

We have observed:

- 14 -

In *Yarnall v. Yorkshire Worsted Mills,* 370 Pa. 93, 87 A.2d 192 (1952), our Supreme Court determined that "[a] client ratifies his attorney's act if he does not repudiate it promptly upon receiving knowledge that the attorney has exceeded his authority." *Id.* at 96, 87 A.2d at 193.

> "[A] client may ratify his attorney's acts; and 'an affirmance of an unauthorized transaction may be inferred from a failure to repudiate it': Restatement, Agency, § 94. Indeed, a client makes his attorney's act his own if he does not disavow it the first moment he receives knowledge that his attorney has transcended his authority."

*Id.* at 96, 87 A.2d at 193, *quoting Baumgartner v. Whinney,* 156 Pa.Super. 167, 39 A.2d 738, 740 (1944).

**Piluso v. Cohen,** 764 A.2d 549, 550-551 (Pa. Super. 2000) (appellant ratified her counsel's action of settling with a defendant when she failed to promptly repudiate the settlement and only objected after the trial concluded as to remaining defendants); **see also Step Plan Services, Inc. v. Koresko,** 12 A.3d 401, 421 n.9 (Pa. Super. 2010).

Our review of the record additionally refutes Appellant's assertion that "[Attorney's] impermissible joint representation precluded his ability to rightfully challenge [Ms.] Hartley's thus uncontested perhaps adverse testimony," concerning Appellant's entry into Little Beach Pond. Appellant's Brief at 19. Appellant's claim discounts that the portion of Ms. Hartley's testimony which Appellant challenges was adduced when Ms. Hartley was called to testify by the Sumner Plaintiffs during their case-in-chief as if on cross-examination. N.T., 2/4/10, at 3-9. Appellant additionally discounts that Ms. Hartley repeated her testimony when she was recalled to the stand "by the Court," and not by Attorney. **Id.** at 43-48. Appellant further

- 15 -

disregards that when Attorney finally examined Ms. Hartley directly during her third turn on the stand, Attorney only adduced testimony that was favorable to Appellant and her co-defendants' joint position that their entries into Little Beach Pond were not wrongfully intended to violate the January 14, 2009 order. *Id.* at 49-56.

Likewise, Appellant's claim regarding damages is meritless. We discern no error by the trial court in determining that Appellant's contempt of the January 14, 2009 order, rather than Attorney's actions, caused Appellant's damages. *See* Trial Court Opinion, 8/22/14, at 7; *see also Myers v. Robert Lewis Seigle, P.C.,* 751 A.2d 1182, 1184 (Pa. Super. 2000) (appellant required to prove actual loss due to attorney's breach of duty of care).

In sum, based on our review of the record and applicable jurisprudence, we find that the trial court did not err in granting summary judgment in favor of Attorneys.

Order affirmed.

Judge Bowes joins the Memorandum.

Judge Donohue concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/4/2015

- 16 -